## Herbert v. Lukens & Montgomery, Appellants.

[Marked to be reported.]

*Evidence of agency—Neglect to transfer insurance policy.*

Duffield purchased from Cunningham a building and lot, executing a purchase money mortgage, at the same time obtaining a policy of fire insurance, and transferring it to the mortgagee. Subsequently Duffield paid off the mortgage, and the policy was re-transferred to him. On the same day he executed a mortgage to Miss Fry, and transferred to her the policy as collateral. Defendants were conveyancers and agents for Miss

Fry, having charge of all of her papers. In February, 1885, defendants received a letter from an attorney stating that Duffield had sold the property, and asking for a loan of the policy to have it transferred to the new owner. Defendants wrote that the papers could be seen at their office, and if the policy was to be transferred, the seller should be sent to them. Subsequently, at request of plaintiff and his attorney, the administrator of Cunningham called at defendant's office, and executed, in the presence of a clerk, but in the absence of defendants, a transfer of the policy to plaintiff, paying to the clerk $1.00 as the expense of transfer. Defendants subsequently noticed the mistake, and notified Cunningham to send Duffield to their office to make a proper transfer. Duffield neglected to call, and a fire occurred on June 16, 1885. Plaintiff asked defendants to collect the loss from the insurance company; they undertook to do so for $5.00, and gave a receipt for " five dollars for services in arranging and attending to loss by fire at premises, Mill and Frankford streets, with Fire Association." The insurance company refused to pay the loss, and plaintiff then brought suit against defendants to recover damages. *Held,* that there was nothing in the evidence to show that defendants had assumed any duty to plaintiff, and that plaintiff was not entitled to recover.

Argued Jan. 9, 1893. Appeal, No. 26, July. T., 1892, by defendants, Charles M. Lukens et al., from judgment of C. P. No. 1, Phila. Co., Sept. T., 1889, No. 157, on verdict for plaintiff, Albert Herbert. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit for alleged neglect to transfer policy of insurance.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows, by BREGY, J.:

["I say if Lukens & Montgomery took money to have this policy transferred but neglected to have it properly done until after the fire, and the fire took place some two or three months after the paper was signed, I think that under the law they would be responsible to the plaintiff for any loss of money by reason of their neglect.] [3] . . . .

[" Now as to the second proposition, the plaintiff contends that those $5.00 were paid to these people to do something they did not do. Mr. Herbert says he paid Lukens & Montgomery $5.00. I do not know that he stated as clearly as his counsel in argument what those $5 were paid for. In other words, I don't think you can find in Mr. Herbert's testimony, or at least I do not remember any such thing, but let me say here that you are the sole judge of the testimony and are not to take my recollection of it, because it is for you; and you cannot

escape responsibility by saying the court thought so and so about the evidence; it is for you."] [4]

Defendant's points were as follows :

" 1. That under the evidence there was no contract or privity of contract between the plaintiff and defendants, and therefore their verdict must be for the defendants." Refused. [1]

2. Binding instructions for defendants. Refused. [2]

Verdict and judgment for plaintiff was $489.18. Defendant appealed.

*Errors assigned* were, (1–4) instructions as above, quoting them.

*J. M. Pile* for appellant.—It was not the duty of defendants to do anything but permit the person whom Ballou sent to sign his name to the transfer—and they did more than their duty when they notified Cunningham that Duffield and not Cunningham was the proper party to sign. They had no control over Duffield, and while he was considering whether or not to come and make the transfer after Cunningham had told him to come, the fire occurred. And now for the neglect of Duffield it is attempted to hold the parties who were merely passive in the matter and had no possible interest in the subject: Mint's Ap., 128 Pa. 163.

If Ballou had sent Duffield, the seller, to defendants to make the transfer, the case might have taken a different aspect, but he did no such thing. He sent the wrong man, and upon him the loss, if any, should fall. But independently of this there was no contract with plaintiff—defendants never heard of him in the matter and did not even know who Ballou was or whether he represented himself or some one else.

*DeForrest Ballou,* for appellees.—The case was fairly submitted to the jury upon a question of fact, as to whether, under the evidence, appellants did undertake to perform services for appellee, and therein were negligent, whereby appellee met with loss. They so found and rendered a verdict for appellee for the amount claimed by him, and the court in banc refused to disturb their finding.

OPINION BY MR. JUSTICE GREEN, February 13, 1893 :

The plaintiff's loss was occasioned by the refusal of the insurance company to pay the insurance money provided in the

policy. That refusal was made because, at the time of the fire, the owner of the building insured was not the holder of the policy. The owner, the plaintiff in the present action, had not taken out any policy himself, and had not obtained a transfer of the policy held by the previous owner, Duffield. The policy issued to Duffield was transferred by him to Miss Fry as collateral security to a mortgage for $800, given for that amount borrowed from her. The defendants, conveyancers, as agents of Miss Fry had the custody of both the mortgage and the policy. In February, 1885, the defendants were informed by a letter from Mr. Ballou, an attorney at law, that Duffield had sold the property subject to the mortgage, and were requested by him to loan him the policy of insurance, to have it transferred to the new owner.

To that letter the defendants made the following reply:

"PHILA., Second Mo., 24th, 1885.

"DEFORREST BALLOU, Esq.,

"No. 413 Walnut Street, Phila.

"The papers you ask about can be seen at our office, as we are not at liberty to loan them. If the policy is to be transferred send the seller here.

"Yours respectfully,

"L. & M.

"LUKENS & MONTGOMERY, Conveyancers,

"No. 1135 Shackamaxon street, Phila."

Mr. Duffield never was sent, prior to the fire, by Mr. Ballou or any one else, to Lukens & Montgomery, to make the transfer, or for any other purpose. In point of fact Mr. Duffield never did transfer the policy to Mr. Herbert, the purchaser of the property, at any time prior to the fire, and it is not shown that he was asked to do so. It appears by the testimony in the cause, that, on April 18, 1885, William J. Cunningham, assuming to act as administrator of John Cunningham, deceased, called at the office of Lukens & Montgomery, and in the presence of a young man named Knorr, in the employ of the defendants, entered on the policy a transfer of it to Albert Herbert, the plaintiff in this suit. Afterwards, on July 29, 1885, another transfer was entered on the policy by Duffield to Herbert. But in the meantime a fire had occurred on June 16, 1885, inflicting a loss of $400 on the building in-

sured. The plaintiff having recovered nothing from the insurance company now seeks to compel the defendants to make good his loss. He claims that he has a cause of action against them because they did not obtain the insurance money for him. In order to sustain this claim he alleges that they are responsible in damages to him, because they did not have the proper transfer of the policy made to him, and also because he paid them a fee of five dollars to attend to the business of collecting the amount of the policy from the insurance company. In support of the latter claim of liability the plaintiff gave in evidence a receipt of which the following is a copy:

" Received, July 29th, 1885, of Mr. Albert Herbert five dollars for services in arranging and attending to loss by fire at premises Mill and Frankfort streets with Fire Association.

" $5.00                          LUKENS & MONTGOMERY,

" Per M. J. SHORK."

It will be noticed that at the time this fee was paid the fire had already occurred, more than a month before. As the insurance company refused to pay because Mr. Herbert was not the lawful holder of the policy at the time of the fire, it is simply absurd to claim that the payment of this fee gave the plaintiff the least right of action against the defendants merely because of a failure to collect the money. The receipt does not purport that they undertook any such service, nor does the oral testimony of the plaintiff tend in the least degree to establish so unreasonable a claim. The legal right to compel the insurance company to pay the money was already gone before the plaintiff engaged the service of the defendants. The plaintiff being on the stand as a witness was asked : " Q. When did you first see Mr. Lukens or Mr. Montgomery about this matter? A. About the time of that receipt (indicating receipt). Q. You had no dealing with them about this property before that? A. I never had any dealing with them only in that case when they told me to give them the $5.00. Q. That was your only dealing with them? A. Yes, sir."

As a matter of course the defendants might be entirely willing to do what they could to induce the insurance company to pay the loss, in consideration of a fee received for that purpose, but to hold them responsible for the loss of the legal right to recover anything from the company, which had already

taken place before the fire, because they took this fee after the fire, is a proposition which needs no discussion. It is folly to think of it.

The only other ground of alleged liability is the failure of the defendants to have a proper transfer of the policy made before the fire. If they had ever been employed by the plaintiff to render that service, and had failed to perform it correctly, and thereby the plaintiff had lost the right of action against the company, they would certainly be liable for the consequences. But the trouble with the plaintiff's case is that there is no evidence in the cause of any such employment, or of any breach of such a duty. In the plaintiff's testimony, quoted above, he had already said that he had no dealings with the defendants about this property before the payment of the five dollars.

He was further asked: "Q. Did you have anything to do with them in connection with this transfer of the property to you? (Indicating deed.) A. Nothing at all. Q. When you say you paid them $5.00 to have the policy transferred, you don't mean that? A. I mean that they were to assist me in procuring the loss. Q. That is, they were to go to the Fire Association? A. Yes, sir, and they had been paid for that."

He had previously testified: "Q. Was there not a bargain made between you that he was to do something for you? A. He was to assist me. Q. How? A. He was to assist me in procuring the loss. Q. Was that all that was said between you and Mr. Lukens about what he was to do in procuring the loss at the Fire Association? A. That was the understanding between Mr. Lukens and myself. Q. Have you stated all that Mr. Lukens promised to do for you in obtaining this loss upon this policy? A. He was to go down there to assist me to procure the loss."

It will thus be seen that the only relation existing between the plaintiff and defendants in reference to the loss by the fire was that which was created by the employment on the 29th of July, after the fire had occurred, and after the legal right of action against the company was gone. An original employment by the plaintiff of the defendants, to make a transfer of the policy to him, is not only not proved, but is positively disproved by the plaintiff's own testimony.

An attempt however was made to establish such a contractual

relation between the plaintiff and defendants in another way. It was this: Mr. William J. Cunningham testified that he went to Lukens & Montgomery to transfer the policy on February 21, 1885, and that he was directed to do so by Mr. Ballou and Mr. Herbert. He was asked by Mr. Ballou: " Q. Somebody asked you to go to the office of Lukens & Montgomery to make the transfer? A. Yes, sir. Q. Who did? A. I think that you did and Mr. Herbert. Q. What did you do? A. I signed what I supposed to be a policy of insurance to Mr. Herbert." The policy being exhibited to him he was asked: " Q. Is that your signature you made at the time? A. Yes, sir. I signed it as administrator of my father. Q. Whom did you see then? A. I think Mr. Montgomery. Q. What took place between you? You told him what you wanted to do? A. Yes, sir. Q. Did you tell him to whom you wanted to sign the policy? A. He was familiar with that. Q. He said that he had heard from me? A. I think so. Q. And he knew what you wanted to do? A. Yes, sir. Q. And for the purpose of making this transfer to Mr. Herbert you signed your name? A. Yes, sir. Q. Did you pay them anything? A. I paid them I think somewhere around one dollar, may be less, but it was somewhere around there."

On cross-examination he was asked: " Q. When you went there to sign your name what did you ask Mr. Montgomery to do? A. I knew Mr. Lukens and Mr. Montgomery for years. I went there and I told them that I had come in regard to the Frankfort property—that I wanted to sign the policy. They immediately got the policy out, or if they did not do it one of their clerks did it, and did it through their instructions. They went to the case and got it out and then I put my name to it at the time. I was asked a fee of about $1.00. Q. That was the transfer fee? A. Yes, sir. Q. That was all that took place? A. Yes, sir. Q. Did you mention Mr. Herbert's name in any way except as being the transferee of the policy? A. If I did not I know it was understood. Q. What was said—did you say anything to them about Mr. Herbert except that it was to be transferred to him? A. I told them that I had sold the property to him. Q. And that you wanted to transfer the policy to him? A. Yes, sir. I cannot remember the exact words. Q. Do you remember anything else? A. No sir, nothing else."

The foregoing is the testimony upon which it is attempted to impose upon the defendants the liability for the loss of the insurance money. How utterly incompetent it is to produce any such result can be seen very quickly.

It must be remembered that Lukens & Montgomery were the custodians on behalf of Miss Fry, the mortgagee, and as her agent, both of her mortgage and the policy of insurance. When they were applied to by Mr. Ballou for a loan of the policy, they replied by the letter of February 24, 1885, to him saying: " The papers you ask about can be seen at our office, as we are not at liberty to loan them. If the policy is to be transferred send the seller here." Although this was in February it was not until April 21st, nearly two months later, when Mr. Cunningham called upon them. When he did call, it was, according to his own testimony, in consequence of instructions from Mr. Ballou and Mr. Herbert to go and make the transfer. That is, those gentlemen, Ballou and Herbert, directed him to go to Lukens and Montgomery and make the transfer to Herbert. He says he went there and told them he had sold the property to Herbert and wanted to transfer the policy to Herbert. Lukens & Montgomery wrote to Ballou to send them the seller to make the transfer, and Cunningham was the man they sent and he declared to Lukens & Montgomery that he was the seller and that he came to make the transfer. Thereupon the policy was produced, and he, Cunningham, wrote upon it the transfer in question. The transfer appears by the entries upon the policy to have been performed by Cunningham's writing his name, " William J. Cunningham, Administrator of John Cunningham deceased," in a column, under other names of previous transferrers, headed, " Transferred by," and the name, " Albert Herbert, subject to above transfer," in another column immediately alongside the first under other names of previous transferees, the column being headed by the words, " Transferred to." Apparently the whole act of transfer was done by Cunningham himself and alone. Nothing was proved to have been written by the defendants or any clerk of theirs. The policy was handed to him and he made the transfer himself, and he does not say that Montgomery, or any one else, directed, or suggested, or advised him to sign it in that way, or in any way. In the whole of his testimony he does not give a

single declaration of Mr. Montgomery on this subject. He says he told them he was the seller and he came to make the transfer. According to his testimony they took him at his word, handed him the policy and he wrote upon it, of his own motion and without any suggestion from them, the transfer in question. Moreover he testified that he did this in obedience to instructions received from the plaintiff himself and Mr. Ballou. He did precisely what he was told to do by those gentlemen, and now in this action one of them claims to hold the defendants responsible for the act of his own selected agent, done in obedience to his own instructions. The idea of pecuniary responsibility on the part of the defendants for such an act done in such circumstances cannot be entertained. But bad as the plaintiff's case on these facts is, it is quite as bad in a legal sense, upon other manifest considerations. Cunningham said he paid about a dollar as a transfer fee, but he paid nothing else. He did not employ the defendants to act as advisers or counsellors for Mr. Herbert in making the transfer. They were not interested or concerned in any way for Mr. Herbert. On the contrary they were concerned as agents for Miss Fry, the holder of the mortgage and policy, and they were not under the slightest obligation to take care of the interests of Mr. Herbert. Mr. Cunningham came to attend to his interests and he did it in precise accordance with the instructions of Mr. Herbert and his counsel. Mr. Herbert had bought the property and it was his duty to know what was necessary to be done in order to obtain a good title to the policy, and to have it done. That responsibility could not possibly be imposed upon the defendants unless they were employed for that purpose, and of such employment there is not a scintilla of proof. The act of transfer was a mere ministerial act, and it was done by the plaintiff's own agent, acting according to the plaintiff's instructions and without any advice or suggestion from the defendants. If the insurance money was lost by reason of negligence as to the transfer of the policy it was the negligence of the plaintiff and his agent Cunningham, for which alone they are responsible.

That Mr. Cunningham was mistaken in saying he saw Mr. Montgomery at the time of the transfer is very apparent from the other testimony both of himself and Mr. Montgomery. The

latter testified that he did not see the transfer until the policy was shown to him, after the transfer was made, and that as soon as he saw it he observed that it was made by the wrong person, as Mr. Duffield was the real owner of the policy and not Mr. Cunningham, and the policy was made to Mr. Duffield. He says he at once, and within a week after the transfer, notified Mr. Cunningham first by letter, and afterwards verbally, that the transfer was wrongly made, and he must send Mr. Duffield to their office to make the proper transfer. But Mr. Duffield never came until after the fire, and he then, on July 29th, signed the transfer. Mr. Cunningham admits on cross-examination, that he was notified by Mr. Montgomery of the defect in the transfer, but thinks it was not until after the fire, though he does not say so positively. But the importance of the testimony on this subject is that it convicts Mr. Cunningham of error in saying he saw, or thought he saw, Mr. Montgomery at the office when the transfer was made. For if Mr. Montgomery, when he saw the transfer, notified Mr. Cunningham that it was made by the wrong person, he could not have been present at the time it was made, as he would necessarily have known of it then. Upon the whole case it is manifest that there is no basis of liability for the loss of the insurance money, as against the defendants, and the learned court below should have so instructed the jury in answer to the defendants' points. The assignments of error are all sustained.

Judgment reversed.